UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BILLY WAYNE EVANS, JR.,

*Plaintiff*,

v.

CENTRAL INTELLIGENCE AGENCY,

*Defendant*.

Civil Action No. 23 - 1888 (LLA)

**MEMORANDUM OPINION**

The matter is before the court on a motion for summary judgment filed by Defendant, the Central Intelligence Agency ("CIA"), ECF No. 19, and a cross-motion for summary judgment filed by Plaintiff Billy Wayne Evans, Jr., ECF No. 21.  Mr. Evans claims that the CIA violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by unlawfully withholding responsive records that pertain to him, ECF No. 1.  Upon consideration of the motions and supporting documentation, the court will grant the CIA's motion for summary judgment and deny Mr. Evans's cross-motion for summary judgment.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are undisputed.  Mr. Evans is an African-American man who resides in Pulaski County, Arkansas.  ECF No. 21-2 ¶¶ 1-2.  Mr. Evans believes that "[his] information has been caught up in the CIA's bulk data collection."  *Id.* ¶ 3.  On November 14, 2022, Mr. Evans submitted a FOIA request to the CIA seeking records about himself.  ECF No. 1 ¶ 11; ECF No. 1-5 (FOIA request).  Specifically, Mr. Evans requested "all records, documents, or communications prepared by, received by, or maintained by the CIA" that mentioned various permutations of his

name. ECF No. 1-5, at 1-2. Two weeks later, the CIA informed Mr. Evans that the agency had received his request. ECF No. 1 ¶ 12; ECF No. 1-6 (acknowledgment letter).

On May 1, 2023, the CIA informed Mr. Evans that it had "not locate[d] any responsive records that would reveal a publicly acknowledged affiliation with the CIA." ECF No. 1-7, at 1. The agency additionally informed him that it could neither confirm nor deny the existence of any records "that would reveal a classified association between the CIA and [Mr. Evans]"—what is known as a *Glomar* response—based on FOIA Exemptions 1 and 3. *Id.* On May 17, Mr. Evans filed an administrative appeal of the CIA's determination, challenging the adequacy of the agency's search and application of FOIA Exemption 1. ECF No. 19-5 (administrative appeal). The CIA acknowledged receipt of the appeal on June 14 but took no further action. ECF No. 1-9 (acknowledgement letter).

After the CIA failed to issue a final determination on Mr. Evans's administrative appeal within twenty working days, Mr. Evans filed this action in June 2023. ECF No. 1; *see* ECF No. 27-1, at 1. Mr. Evans alleges that the CIA violated FOIA by failing to conduct an adequate search and wrongfully withholding nonexempt, responsive records pursuant to FOIA Exemptions 1 and 3. ECF No. 1 ¶¶ 2, 21. He seeks declaratory and injunctive relief, as well as attorney's fees and costs. *Id.* at 4. In December 2023, the case was reassigned to the undersigned. Dec. 15, 2023 Minute Order. In 2024, the parties filed and briefed cross-motions for summary judgment, ECF Nos. 19 to 21, 24 to 28, which are ripe for resolution.

## II.    LEGAL STANDARDS

The purpose of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Congress

nonetheless included nine exemptions to disclosure that "are intended to balance the public's interest in governmental transparency against the legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Tipograph v. U.S. Dep't of Just.*, 83 F. Supp. 3d 234, 238 (D.D.C. 2015) (alteration in original) (internal quotation marks omitted) (quoting *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)). Additionally, in certain circumstances, an agency "may refuse to confirm or deny the existence of [responsive] records." *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. Cent. Intel. Agency*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). A response of this kind is commonly referred to as a *Glomar* response, and it "is valid 'if the fact of the existence or nonexistence of agency records falls within a FOIA exemption.'" *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf*, 473 F.3d at 374).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be awarded to the agency if it can demonstrate that no material facts are in dispute, that it conducted an adequate search for responsive records, and that each record has either been produced or is exempt from disclosure. *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 59 F. Supp. 3d 184, 189 (D.D.C. 2014). The agency invoking a FOIA exemption bears the burden of demonstrating that it applies. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989); *see Knight First Amend. Inst. v. Cent. Intel. Agency*, 11 F.4th 810, 813 (D.C. Cir. 2021) (same for providing a *Glomar* response). This burden is met when agency

affidavits or declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374-75 (quoting *Gardels*, 689 F.2d at 1105). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Manna v. U.S. Dep't of Just.*, 106 F. Supp. 3d 16, 18 (D.D.C. 2015) (quoting *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010)).

### III.   DISCUSSION

The parties dispute whether the CIA's search was adequate, whether the CIA properly provided a *Glomar* response pursuant to FOIA Exemption 1, and whether Mr. Evans exhausted his administrative remedies to challenge the agency's invocation of a *Glomar* response pursuant to FOIA Exemption 3. For the reasons explained below, the court finds for the CIA on each dispute.

#### A.   Adequacy of the CIA's Search

When faced with a FOIA request, an agency need only demonstrate that it "conduct[ed] a search reasonably calculated to uncover all relevant documents" to prevail on a motion for summary judgment about the adequacy of the search. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). "[O]nce the agency has provided a 'reasonably detailed' affidavit describing its search, the burden

shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Pinson v. U.S. Dep't of Just.*, 189 F. Supp. 3d 137, 149 (D.D.C. 2016) (quoting *Morley v. Cent. Intel. Agency*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

In support of its argument that the search was adequate, the CIA proffers the declaration of Mary C. Williams, the Litigation Information Review Officer for the CIA's Information Review and Release Division. ECF No. 19-1. In her declaration, Ms. Williams describes the steps taken by various individuals at the CIA to locate records responsive to Mr. Evans's request. *Id.* ¶¶ 14-19. Specifically, she explains that the CIA utilized "information management professionals who . . . have access to pertinent records; are knowledgeable about the Agency's records systems[;] and are qualified to search those records systems." *Id.* ¶ 14. These professionals "conducted a thorough and diligent search" of four different records systems, which were selected based on the "age and type" of records requested, for records relating to Mr. Evans:

> (1) a system containing electronic versions of all Agency records that have been reviewed and/or compiled for potential public release;
>
> (2) multiple systems containing information regarding personnel affiliated with the CIA;
>
> (3) a system containing security records; and
>
> (4) the Agency's FOIA Electronic Reading Room.

*Id.* ¶ 15. The professionals tried "alternative spellings and different variations of the search terms, as well as combinations with the . . . biographical data provided by [Mr. Evans], including date of birth, mailing address, and social security number." *Id.* ¶ 16. However, "the[ir] search did not yield any responsive records that would reveal a publicly acknowledged affiliation between the CIA and [Mr. Evans]." *Id.* ¶ 17.

Mr. Evans responds that Ms. Williams's declaration is insufficient.  ECF No. 20-4, at 15.  He argues that Ms. Williams "fail[ed] to provide . . . 'detail as to the scope of the examination.'" ECF No. 28, at 9 (quoting *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 370-71 (D.C. Cir. 1980)), such as identifying which specific systems the CIA searched or how many it searched, ECF No. 20-4, at 15.  Mr. Evans further faults her for "us[ing] sweeping, conclusory language" and argues that he "cannot be assured that the agency has examined all files in its possession to ensure that it has located all [responsive] records."  ECF No. 20-4, at 16; ECF No. 20-2 ¶ 14.

In the court's view, Mr. Evans falls short of producing the "countervailing evidence" required to defeat summary judgment.  *Pinson*, 189 F. Supp. 3d at 149 (quoting *Morley*, 508 F.3d at 1116).  Mr. Evans points to no authority in support of his claim that the agency must list each system it searched, as opposed to the categories or types of systems, which Ms. Williams *did* provide.  ECF No. 19-1 ¶ 15.  Additionally, Mr. Evans's "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  Accordingly, the court concludes that the CIA has satisfied its burden of showing that it conducted "a reasonable search tailored to the nature of [Mr. Evans's] particular request."  *Campbell v. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998).

### B.     Exemption 1

FOIA Exemption 1 protects from disclosure "matters that are . . . specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1)(A).  Executive Order 13,526 provides that information may be classified only if "the original classification authority determines that the unauthorized disclosure of the

information reasonably could be expected to result in damage to the national security, [and] . . . is able to identify or describe the damage." Exec. Order 13,526 § 1.1(4). Such information must pertain to certain topics, including "intelligence activities (including covert action), intelligence sources or methods," "foreign relations or foreign activities of the United States," and "vulnerabilities or capabilities of systems . . . projects, plans, or protection services relating to the national security." *Id.* § 1.4(c), (d), (g). The order further provides that "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order." *Id.* § 3.6(a).

Because "national security is primarily the province of the Executive, [courts] decline to micromanage agency determinations [regarding which] information should remain secret" and "simply consider whether the agency has plausibly asserted that the matters are in fact properly classified pursuant to an executive order." *Schaerr v. U.S. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023). Thus, "an agency's justification for invoking [a *Glomar* response supported by Exemption 1] is sufficient if it appears 'logical' or 'plausible,'" *Wolf*, 473 F.3d at 374-75 (quoting *Gardels*, 689 F.2d at 1105), that (1) the fact of the existence of the records in question is itself actually and properly classified, and (2) "disclosure [of the existence of responsive records] 'could reasonably be expected' to harm national security," *Knight First Amend. Inst.*, 11 F.4th at 818 (quoting Exec. Order 13,526 § 1.4).

The CIA argues that it properly issued a *Glomar* response under FOIA Exemption 1. ECF No. 19, at 11. As to classification, the agency states that acknowledging the existence or nonexistence of records concerning Mr. Evans is "a currently and properly classified fact," which relates to "intelligence activities (including covert action) [or] intelligence sources or methods" under Executive Order 13,526 § 1.4(c). ECF No. 19-1 ¶ 23. Mr. Evans does not challenge the

7

classification of any responsive records, thereby conceding the first prong in *Knight*. *See* ECF No. 20-4, at 19-21; ECF No. 21-4, at 19-21; ECF No. 28, at 9-12; *see also Day v. D.C. Dep't of Consumer & Regul. Affs.*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").

As to the risks of disclosure, the CIA asserts that confirming or denying the existence or nonexistence of records concerning Mr. Evans "would be reasonably expected to cause damage to national security." ECF No. 19-1 ¶ 30. As Ms. Williams explains, revealing such classified intelligence information would "jeopardize the clandestine nature of the [CIA's] intelligence activities and/or disclose information about CIA's sources and methods." *Id.* ¶ 29. Furthermore, the information "could be used by terrorist organizations, foreign intelligence services, and other hostile adversaries to . . . attack the United States and its interests." *Id.* ¶ 26.

Mr. Evans takes issue with the level of detail in Ms. Williams's declaration, claiming that the CIA must provide more than "some abstract national security risk." ECF No. 28, at 11. The court is not persuaded. "[T]he very nature of the *Glomar* posture requires that agencies categorically refuse to either confirm or deny the existence of responsive records that would reflect a classified or unacknowledged affiliation with a person because confirmation or denial that such records exist has the potential to harm national security, in and of itself." *Mobley v. Cent. Intel. Agency*, 924 F. Supp. 2d 24, 51 (D.D.C. 2013). And courts "have consistently reiterated the principle of deference to the executive in the FOIA context when national security concerns are implicated." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003). The CIA's assertion that confirming or denying the existence of records about Mr. Evans would "jeopardize the clandestine nature" of the CIA and disclose information about the agency's

"sources and methods" is both "plausible" and "logical," and it is not for the court to second-guess. *See Wolf*, 473 F.3d at 374-75. Accordingly, the court concludes that the CIA has carried its burden to assert a *Glomar* response under Exemption 1.

### C.     Exemption 3

The CIA argues that the court should not address the merits of Mr. Evans's claim under FOIA Exemption 3 because Mr. Evans failed to exhaust his administrative remedies. The court agrees. To administratively exhaust a FOIA request, the plaintiff must complete the process set forth in the statute. *See* 5 U.S.C. § 552(a)(6)(A)(i)-(ii). Once an individual submits a FOIA request, the agency must "determine within [twenty] days . . . whether to comply with such request"; immediately notify the requester of that decision and the reasons for it; and inform the requester of his right to appeal that decision. *Id.* § 552(a)(6)(A)(i). If an appeal is submitted, the agency must "make a determination [regarding the FOIA request] . . . within twenty days . . . after the receipt of such appeal." *Id.* § 552(a)(6)(A)(ii). In "unusual circumstances," the agency may grant itself an extension of ten days, either in providing its initial response or its decision on appeal to the requester. *Id.* § 552(a)(6)(B). Where an agency fails to comply with these statutory deadlines, "a requestor is deemed to have constructively exhausted his administrative remedies." *Bonner v. Soc. Sec. Admin.*, 574 F. Supp. 2d 136, 139 (D.D.C. 2008).

Here, after the CIA issued its initial denial of Mr. Evans's request, Mr. Evans submitted an appeal challenging the adequacy of the search and the agency's *Glomar* response under Exemption 1. ECF No. 19-5, at 4-5. Notably, Mr. Evans *did not* challenge the CIA's invocation of Exemption 3 in his administrative appeal. *See generally id.* When, during an administrative appeal, the plaintiff selectively challenges only certain bases for an agency's withholding, he has not administratively exhausted the bases he declined to press before the agency. *See Dettmann v.*

9

*U.S. Dep't of Just.*, 802 F.2d 1472, 1476-77 (D.C. Cir. 1986) ("[A] plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request—and thus properly seek judicial review regarding that request—and yet not have exhausted h[is] remedies with respect to another aspect of a FOIA request."); *see also Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, No. 04-CV-1724, 2006 WL 696053, at *24 (D.D.C. Mar. 20, 2006) (holding that a FOIA plaintiff had failed to exhaust its administrative remedies concerning withholdings under FOIA Exemption 6 by only raising FOIA Exemptions 4 and 5 in its administrative appeal). While *Dettmann* and *Hornbeck* concerned actual exhaustion, the court discerns no reason why the same rule would not apply to constructive exhaustion. Accordingly, the court concludes that Mr. Evans may not seek judicial review of the CIA's *Glomar* response under Exemption 3 because he did not exhaust his administrative remedies.

## IV.   CONCLUSION

For the foregoing reasons, the court will grant the CIA's Motion for Summary Judgment, ECF No. 19, and deny Mr. Evans's Cross-Motion for Summary Judgment, ECF No. 21. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 25, 2025